Parisi, Appellant, *v.* Philadelphia Zoning Board of Adjustment.

Argued May 28, 1958. Before JONES, C. J., BELL, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Irving Stander,* for appellant.

*James L. Stern,* Deputy City Solicitor, with him *Matthew W. Bullock, Jr.,* Assistant City Solicitor, and *David Berger,* City Solicitor, for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, June 30, 1958:

The plaintiff is the owner of a lot in Philadelphia located in a district zoned "A" Commercial. He applied to the zoning administrator under the provisions of Chapter 14-303, Section (2), of the Philadelphia Zoning Code for a use permit which would allow him to construct a car washing establishment on his property. The administrator refused the application. The plaintiff thereupon appealed the matter to the Board of Adjustment. The Board denied the application assigning as the reason that the Zoning Code does not permit the use of a proposed structure in an "A" Com-

mercial district for a car washing business. On the owner's appeal from the Board's action, the court below dismissed the appeal without prejudice to an application by the appellant to the Zoning Board for a variance. This appeal then followed, it being the plaintiff's position that the proposed use of his lot did not present a case for a variance with which we agree.

In *Novello v. Zoning Board of Adjustment,* 384 Pa. 294, 297, 121 A. 2d 91, we held that a car wash was a permitted use under Section 16 of the Philadelphia Zoning Ordinance of August 10, 1933, in an area zoned "A" Commercial. This conclusion was based upon our interpretation of the language of subdivisions 32, 36 and 37 of Section 16 of the 1933 Ordinance. "The sole question" in the *Novello* case, as we there stated it, ". . . was whether a car wash fell within the purview of numbers 32, 36 and 37 of section 16 of the Ordinance, and whether the grant of a certificate for such use would be in general harmony with the standards set forth in section 3 of the enabling Act of May 6, 1929, P. L. 1551." We specifically answered both aspects of the question in the affirmative. Mr. Chief Justice STERN, who spoke for the court, said in respect of quoted language of provisions 32, 36 and 37, that, ". . . the washing of cars is a use 'customarily accessory and incidental to' the operation of 'a public or commercial garage or repair shop, gas and oil service stations,'—indeed a normal, routine feature of such operation—and therefore that such a use is 'of the same general character' as that ordinarily conducted in those establishments."

By Ordinance of October 11, 1956, which was six months after the decision in the *Novello* case, supra, the City Council of Philadelphia adopted a Zoning Code which, in part, effected some changes in existing law. However, Chapter 14-303 of the Zoning Code carried forward, *without change whatsoever,* what had been

Section 16 of the Zoning Ordinance of 1933 which, as already stated, we had construed in the *Novello* case, supra; and the criteria for a certification of a permitted use, as prescribed by the enabling Act of May 6, 1929, P. L. 1551 (53 PS §14754), by which the application in the *Novello* case was tested, are identical with the requirements specified in Chapter 14-1802, Section (3) of the Zoning Code.

But, the amended form of the "Use Restrictions" for property in a *"B" Commercial* area, as contained in Chapter 14-304 of the Zoning Code of 1956, was made to include, inter alia, "(e) Car washing establishments, using mechanical equipment for the purpose of washing, and/or polishing automobiles and other vehicles, provided a Zoning Board of Adjustment certificate, as herein provided, is obtained. Such Zoning Board of Adjustment certificate may only be issued where such use will have on the premises: (1) a waiting area for incoming cars accessible to the entrance end of the washing equipment, of at least 4000 square feet, and (2) an area beyond the exit end of the washing equipment, of at least 400 square feet, so situated as to be usable for the hand finishing of the washing process."

"B" Commercial is a less restricted classification than "A" Commercial and embraces, inter alia, all "The uses permitted in 'A' Commercial District . . . ." Since the Zoning Code expressly included a "Car washing establishment", as above quoted, among the permitted uses in a "B" Commercial district, the Zoning Board contends that the Code amendment in such regard worked an implied repeal of the car washing use which we found to be a permitted use in an "A" Commercial district under the provisions of Section 16 of the 1933 Ordinance and now contained in Chapter 14-303 of the Zoning Code of 1956. The contention is manifestly untenable.

When we construed the language of Section 16 of the Ordinance of 1933 as intended to mean that a car washing establishment was a permitted use (once certified) in an "A" Commercial district, the situation was the same as if such use had been set out in plain and explicit terms in Section 16 as enacted. Thenceforth, the indicated use in an "A" Commercial district, as so adjudicated by us, could be nullified only by an express or necessarily implied legislative repeal. Admittedly, the Zoning Code of 1956 contains no express repeal of Section 16 of the 1933 Zoning Ordinance. On the contrary, as heretofore observed, Section 16 of the Ordinance of 1933 was carried into the Zoning Code of 1956 as Chapter 14-303, *ipsissimis verbis*. That action of itself was presumptively tantamount to legislative approval of our earlier construction of the identical language: *Bogdan v. School District of Coal Township*, 369 Pa. 147, 152, 85 A. 2d 139.

Thus, the Board's contention comes face to face at the outset with the familiar and long established rule of statutory construction that when, in a later legislative enactment, the same language is used as in a prior cognate statute, which has been construed by us, the presumption is that the language thus repeated is to be interpreted in the same way it previously had been when we passed upon the earlier enactment: *Buhl's Estate*, 300 Pa. 29, 32, 150 A. 86. See, also, *Bell v. Bell*, 287 Pa. 269, 273, 135 A. 219, and *Spangler's Estate*, 281 Pa. 118, 123, 126 A. 252. As recognized in *Lower Nazareth Township Supervisors' Appeal*, 341 Pa. 171, 175, 19 A. 2d 92, the foregoing rule has been codified as subsection (4) of Section 52 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552(4).

The Board's contention is confronted by the further barrier that implied repeals are not favored by the law: *Scott v. Bell*, 344 Pa. 243, 246, 25 A. 2d 308, and *H. C.*

*Frick Coke Company Appeal,* 352 Pa. 269, 274, 42 A. 2d
532. Of course, that does not mean that the additional
obstacle cited is insurmountable in all instances. There
may, indeed, be an implied repeal of a legislative enact-
ment. But it can arise only where the language used
in the later statute necessarily discloses an irreconcila-
ble repugnancy between its provisions and those of the
earlier statute so inconsistent as not to admit of any
fair consonant construction of the two. In *Scott v.
Bell,* supra, we quoted with approval from Endlich on
Interpretation of Statutes, §210, as follows: " 'In order
to give an act not covering the entire ground of an ear-
lier one, nor clearly intended as a substitute for it the
effect of repealing it, the implication of an intention
to repeal must necessarily flow from the language used,
disclosing a repugnancy between its provisions and
those of the earlier law, so positive as to be irreconcila-
ble by any fair, strict or liberal, construction of it,
which would, without destroying its evident intent and
meaning, find for it a reasonable field of operation, pre-
serving, at the same time, the force of the earlier law,
and construing both together in harmony with the whole
course of legislation upon the subject.' "

It is clear beyond question that the amended form
of the "Use Restrictions" in "B" Commercial districts,
as contained in Chapter 14-304 of the Zoning Code of
1956, produces no such repugnancy to the language of
Section 16 of the Zoning Act of 1933, now contained
verbatim in Chapter 14-303 of the Zoning Code as ap-
plicable to "A" Commercial districts. The Board
urges, however, that, since all permitted uses in "A"
Commercial districts are by express reference adopted
for "B" Commercial districts, it was unnecessary to
include "Car washing establishment", *eo nomine,* in
"B" Commercial districts by the amendment in Chap-
ter 14-304 of the 1956 Code, unless it were to be deemed

thenceforth, as a matter of law, that car washing establishments were no longer a permitted use in "A" Commercial districts. While this deduction is a possible inference, it is by no means an exclusive inference and is far from justifying, as a necessary consequence, the implied repeal for which the Board contends. The allowance of car washing establishments in "A" Commercial districts rests upon our decision in the *Novello* case and is not specifically mentioned in the ordinance itself. That City Council, upon codifying the municipality's zoning law, put in exact words for "B" Commercial districts the car washing use which we had found in the language, now contained in Chapter 14-303, as being permitted in "A" Commercial districts, was but a work of cautious assurance. And, so, the meaning of the words in Chapter 14-303, as we construed them in the *Novello* case (while a part of Section 16 of the 1933 Ordinance), and the use amendment with respect to "B" Commercial districts in Chapter 14-304 can be read together and the whole given its evident intent and meaning, preserving at the same time the force of the earlier law and construing both together in harmony with the whole course of the councilmanic legislation on the subject.

This conclusion is further confirmed by our holding in *Garner v. Zoning Board of Adjustment,* 388 Pa. 98, 101, 130 A. 2d 148, some five months after the adoption of the Zoning Code of 1956. In the *Garner* case, the applicant for a car washing permit in an "A" Commercial district was held to be entitled to a certificate since the evidence failed to establish that the requested use would not be in harmony with the general purpose of zoning in line with the standards fixed by the enabling Act of 1929, supra. Recognition that car washing establishments continued to be a permitted use in "A" Commercial districts subsequent to the enactment

of the Zoning Code of 1956 is implicit in our decision in the *Garner* case. Had the Zoning Code impliedly repealed the car washing use theretofore permitted in "A" Commercial districts, that fact alone would have made short shrift of the appeal in the *Garner* case. Yet, neither the City nor the intervening property owners, as appellants, ever suggested any such idea. On the contrary, the City's brief in that case tacitly conceded that car washing establishments continued to be a permitted use in "A" Commercial districts subsequent to the adoption of the Zoning Code of 1956.

It follows, therefore, that the present appellant, as the owner of property in an "A" Commercial district, is entitled to the permit for which he has applied for the construction of a car washing establishment on his lot once the use has been certificated by the Board of Adjustment. Whether he is entitled to such a certificate will depend upon what the proofs show as to the proposed use being in harmony with the standards fixed by Chapter 14-1802, Section (3), of the Zoning Code which were formerly the criteria specified by the enabling Act of 1929, supra. It is to be borne in mind in this connection that ". . . the applicant [is] not obliged, in order to obtain a certificate from the Board, to establish, as in the case of a variance, that an unnecessary hardship would result if a certificate were refused": *Novello v. Zoning Board of Adjustment,* supra; also, *Garner v. Zoning Board of Adjustment,* supra.

The order of the court below is reversed and the record remanded for further proceedings not inconsistent with this opinion.